UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SCOTT OSBORN,**

  **Plaintiff,**         Case No. 2:20-cv-1229
                JUDGE EDMUND A. SAGUS, JR.
  v.              Magistrate Judge Kimberly A. Jolson

**CITY OF COLUMBUS, et al.,**

  **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion *in Limine* (ECF No. 68), Plaintiff's Memorandum in Opposition (ECF No. 72), Plaintiff's Motion *in Limine* (ECF No. 69), and Defendants' Memorandum in Opposition (ECF No. 73). For the reasons set forth below, both motions are **GRANTED IN PART AND DENIED IN PART**.

**I.**

This case is scheduled for trial on September 11, 2023. The United States Court of Appeals for the Sixth Circuit summarized this action and its current procedural posture as follows:

> Scott Osborn sought help from the police after losing control of his vehicle and crashing into parked cars. Osborn's initial encounter with the City of Columbus police officers spurred a multi-minute struggle, beginning with Osborn being body slammed to the ground, punched repeatedly in the head and torso, tased twice, and maced twice, and ending with him being handcuffed, hobble-strapped, and charged with obstructing official business and resisting arrest.
>
> Osborn filed suit against the City and relevant named and unnamed officers and supervisors relating to his injuries and the subsequent legal proceedings, all of whom moved for summary judgment. Osborn voluntarily dismissed some claims against the City and three of the officers, and the district court granted summary judgment as to the remaining claims against those defendants. As to Officers

>Ladipo and J. Smith, the district court denied summary judgment on Osborn's excessive force, assault and battery, and intentional infliction of emotional distress claims . . . .

*Osborn v. City of Columbus*, Case No. 22-3570 (6th Cir. March 15, 2023) (affirming this Court's denial of summary judgment).

## II.

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*. The United States Supreme Court has noted, however, that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984). The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.,* 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir.1997)).

Evidentiary rulings are made subject to the district court's sound discretion. *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019). To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.,* 326 F.Supp.2d at 846; *Koch,* 2 F.Supp.2d at 1388; *cf. Luce,* 469 U.S. at 41. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.,* 326 F. Supp.2d at 846.

## III.

The parties utilize their *in limine* motions to ask for exclusion of (A) certain evidence anticipated to be offered at trial; and (B) some or all of the others' expert witness reports.

A.       **Evidence**

Defendants move for exclusion of evidence related to the City of Columbus and certain Police Officers. Plaintiff requests exclusion of evidence regarding his drug use, his "fleeing" from the accident, his criminal history, Officer Smith's father, and the interview with Plaintiff at the hospital.

1.       **Evidence Regarding the City, Defendant Officers, and Dismissed Parties**

Defendants move to exclude evidence related to claims against the City of Columbus and other individual officers who are no longer in this lawsuit. They also move to preclude evidence of past misconduct of a Defendant Officer.

    a.       **City of Columbus**

The City of Columbus moved for summary judgment in its favor, which was granted, and was thereafter dismissed from this case. Defendants contend, and Plaintiff does not dispute, that this evidence is not relevant and thus it is excluded.

    b.       **Past actions or Potential Misconduct of the Defendant Officers**

Defendants argue that "Plaintiff should be precluded from making any inquiry, comment, or argument pertaining to any other alleged misconduct of the Defendant Officers, or any other lawsuits, complaints, investigations, discipline, or incidents other than the one at issue" because it is prohibited by Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

Plaintiff agrees that evidence of a defendant's past wrongs is not admissible to show he has now acted in conformity therewith. Plaintiff, however, argues that evidence of other acts is admissible for reasons such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. Fed. R. Evid. 404 (b)(2). Plaintiff contends that

3

Officer Ladipo's motive was harm to the public because of his complete and total lack of preparation for interacting with accident victims and his demonstrated lack of attention to safety. Plaintiff states:

> In Officer Ladipo's 90-Day Performance Evaluation his supervisors note that he has not responded to training as it relates to officer safety, has used poor officer safety skills several times and has used poor judgment several times during dangerous situations. His supervisors go on to note that he had been "struggling with officer safety" and they put in place a plan of action for him to improve. Officer Ladipo attended remedial training in May 2017 with an emphasis on decision making and the use of force continuum.

(Pl's Mem. in Opp. at 6, ECF No. 72.)

The Court is at a disadvantage because it has no information about the specific discipline or improvement plan that dealt with "the use of force continuum," which could potentially be admissible under Rule 404(b)'s intent or motive exceptions to inadmissibility. The Court, therefore, holds this issue in abeyance until the Final Pretrial Conference. Plaintiff must bring the specific evidence related to use of force issues and this Defendant Officer that he seeks to admit.

### c. Harm Not Caused by Defendant Officers

Defendants move for exclusion of evidence of harm that potentially was caused by Officer Brian Smith who is no longer a defendant in this action. Defendants contend that because Plaintiff does not attribute the use of mace to either remaining Defendant Officer, it must be excluded. Defendants maintain that "[t]o offer evidence of injury caused by a now-dismissed defendant would provide substantially more confusion than it would clarity for the jury. Fed. R. Evid. 403 excludes otherwise relevant evidence if that evidence is substantially outweighed by a danger of unfair prejudice or of confusing the jury." (Def's Mot. at 12, ECF No. 68). Defendants conclude:

> Plaintiff should be limited to presenting evidence of those injuries and damages which can reasonably be attributed to the actions of one of the named parties in this case. Accordingly, references to the use of and injury caused by mace – which was done only by a dismissed defendant– should be precluded.

*Id*. at 12–13. This Court disagrees.

As Plaintiff correctly asserts, he is permitted to tell the story of what happened. This will not confuse the jury. Indeed, jurors "who hear a story . . . may be puzzled at the missing chapters." *Old Chief v. United States*, 519 U.S. 172, 189 (1997) (interpreting the scope of Rule 403). Such would be the case here if Plaintiff could testify as to the injuries that resulted from some of the altercation but not all of it. The remaining Defendant is entitled to a limiting instruction to the effect that he may only be responsible for injuries he may have caused. Accordingly, this evidence shall not be excluded.

### 2. Plaintiff's Alleged Drug Use

Plaintiff moves for the exclusion of his alleged drug use, about which he was questioned by Defense counsel during his deposition. Plaintiff argues that there is no evidence at all that he "used or possessed or was under the influence of illegal drugs before, during or after his interaction with officers." (Pl's Mot. at 2, ECF No. 69.) Plaintiff also asks for redaction of his medical records that states he had a "presumptive positive" drug screen, and that he was in "abstinence from his drug habit." Plaintiff contends that "the city does not intend to call any witness to explain to the jury what a 'presumptive positive' drug screen means," and thus, "these references in the medical records will confuse the jury and are highly prejudicial to the plaintiff and must be limited." *Id*.

Defendants disagree with Plaintiff's assessment. They maintain that "[o]n the morning that he encountered the Defendant Officers, Plaintiff had amphetamines, benzodiazepines, cocaine and oxycodone in his system." (Defs' Mem. in Opp. at 1, ECF No. 73) (citing medical records). Defendants assert that, because Plaintiff is taking the stand, they have the right to ask him about his ability to perceive the events that took place at the altercation. This Court disagrees.

A material issue in this case is whether the Defendant Officers' actions were objectively reasonable in light of what they knew during the arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Officers did not know that Plaintiff had drugs in his system at the time of the altercation that led to his hospitalization. Further, "[a]s a general matter, prior drug use is not relevant to a witness's character for truthfulness." *United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009). Finally, the probative value of Plaintiff's drug use is minimal and is substantially outweighed by the prejudicial effect that his drug use would provide. Thus, evidence of Plaintiff's drug use is properly excluded.

### 3. "Fleeing" Evidence

Plaintiff moves to exclude two types of "fleeing" evidence. The first comes from Brandy Lennex, an eyewitness to the altercation between Plaintiff and the officers. The second comes from Plaintiff's medical records made after the altercation.

#### a. Brandy Lennex

It is not disputed that after the car accident, Plaintiff called 911. Brandy Lennex lived close to where the accident occurred, heard it, and came out of her home to speak with the police about what she saw. Ms. Lennex also testified at Plaintiff's trial for obstruction of police business. In that trial, she several times stated that she was unsure if Plaintiff was about to flee or that he looked like he might flee. The state court judge sustained counsel's objection to this testimony and struck it from the record, directing the jury to ignore it. Ms. Lennex also made these same statements regarding potential fleeing to an officer on the scene, whose body worn camera footage recorded it. Ms. Lennex has since died. Defendants have timely filed a notice of intent to use this camera footage.

Plaintiff asks the Court to prohibit evidence of Ms. Lennex's perception of Plaintiff potentially fleeing from the police prior to his hospitalization that was recorded on the Officer's

6

body cam. Defendants oppose this request, arguing that the statements are not inadmissible hearsay because, while they are out of court statements which are being offered for the truth of the matter asserted, they meet the Rule 807 residual exception to the hearsay rule. This Court disagrees.

> The Sixth Circuit directs:
>
> Federal Rule of Evidence 807 allows the admission of a hearsay statement that does not fall under the exceptions to hearsay found in Rules 803 and 804 if the statement meets four criteria: (1) the statement has equivalent circumstantial guarantees of trustworthiness, (2) the statement is offered as evidence of a material fact, (3) the statement is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts, and (4) admitting the statement will best serve the purposes of the Rules of Evidence and the interests of justice. Fed.R.Evid. 807; *United States v. Gomez–Lemos,* 939 F.2d 326, 329 (6th Cir.1991).

*Brumley v. Albert E. Brumley & Sons, Inc.*, 727 F.3d 574, 578 (6th Cir. 2013).

Here, the Court finds that the third element is not met. That is, the statement is not more probative on the material fact than any other evidence that the proponent can obtain through reasonable efforts. There is video coverage of the entire altercation. The perception of a bystander who only heard the crash and came down to speak to an officer is not more probative than the videos of the actual encounter. Moreover, even if it was admissible, the Court would exclude it under Rule 403 because "its probative value is substantially outweighed by a danger of unfair prejudice, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Ms. Lennex cannot be cross examined about her statements, which are speculative. Thus, her statements and recordings of her statements are excluded.

   **b.**  **Medical Records**

Plaintiff asks for redaction from his medical records, the following:

> The references to Mr. Osborn allegedly fleeing are on the following pages of his OhioHealth medical records, part one:

7

> Page 4 specifically states, "He got out of the vehicle and fled from police on foot."
>
> page 21 specifically states, "MVC v. multiple stationary vehicles followed by fleeing his vehicle…"
>
> page 22 specifically states, "He self-extricated and attempted to flee the scene on foot."
>
> page 56 specifically states, "He self-extricated and fled the scene."
>
> page 61 specifically states, he "Was pursued on foot by police…"
>
> OhioHealth medical records part two:
> page 14 specifically states, "He self-extricated and attempted to flee the scene on foot."
>
> page 18 specifically states, he "Was pursued on foot by police…"

(Pl's Mot. at 3, ECF No. 69.)

Defendants respond that these "[r]eferences to Plaintiff's flight show up in his medical records primarily under the 'history of present illness' portion. This information comes from the patients themselves." (Defs' Mem. in Opp. at 4, ECF No. 73.) Defendants conclude:

> The probative value of Plaintiff's medical records and his present illness at that time substantially outweighs the danger of any prejudicial effect. To the extent that Plaintiff argues these statements are hearsay, the medical records are stipulated to meet a hearsay exception, 803(6). Any statements Plaintiff made to medical professionals contained in the records are an exemption to hearsay as a party opponent under 801(D)(2)(a) and an exception to hearsay as a statement made for medical treatment under 803(4). *See* STIPULATIONS (DOC. 67, PAGEID #1008). Plaintiff has provided no valid basis for redacting the history of present illness from his medical records covering the event for which he is seeking damages.

*Id*.

While Defendants suggest that Plaintiff himself stated that he was fleeing from the police, Plaintiff submits that it was the nurse who believed Plaintiff was fleeing based on information she received from someone other than Plaintiff. The record does not indicate that Plaintiff gave such history to his medical providers, which is critical.

8

The medical records are an exception to the hearsay rule and are, at least in large part, admissible. However, the factual statements made by the nurse are not admissible unless it was Plaintiff himself who told the nurse he was fleeing, which does not appear to be the case here. It is unclear from whom the factual statements regarding fleeing came. Therefore, these statements are excludable 403 because their probative value is substantially outweighed by a danger of unfair prejudice and misleading the jury. Fed. R. Evid. 403.

4.     **Plaintiff's Criminal History**

Plaintiff moves under Federal Rule of Evidence 609 to prohibit evidence of his criminal history. Under Rule 609, evidence of a prior criminal conviction is available for impeachment purposes if the prior crime was punishable by death or imprisonment for more than one year. Rule 609 (b) further limits the use of any prior criminal conviction occurring more than ten years ago.

Plaintiff cites to two instances of criminal activity he seeks to have excluded. First, is a cocaine possession conviction almost twenty-five years. Defendants also address a 2001 conviction for assaulting a police officer, indicating that the evidence of either or both convictions may be admissible for impeachment purposes if Plaintiff opens the door seeking to establish his own good character. *Helfrich v. Lakeside Park Police Dept.*, 497 F. App'x 500, 509 (6th Cir. 2012). This Court agrees. The evidence is therefore excluded unless Plaintiff opens the door to it. If Defendants believe that has occurred at trial, they must seek a side bar with the Court before any questioning about these past crimes.

As to the evidence of the charges of resisting arrest and obstructing official business, the parties address only the obstructing charge because the resisting arrest charge was dropped. As to the obstruction of official business charge, Plaintiff argues that Federal Rule of Evidence 609 prohibits admission because the crime is a misdemeanor, Ohio Revised Code § 2321.31, and

9

therefore is not punishable by death or more than one year imprisonment so is excludable under Rule 609. Also, Plaintiff contends that Rule 410 clearly prohibits Plaintiff's plea but does not specifically address the finding of guilt.

Defendants disagree and posit:

> Plaintiff's conviction for obstruction in this case is not only admissible, but relevant to the jury's determination of the reasonableness of the officers' conduct. Plaintiff entered a no contest plea to a charge of obstructing official business by stipulating to the truth of the allegations, notably that he "fail[ed] to obey commands and plac[ed] his hands on officers to . . .impede the investigation of an auto accident." These facts are highly relevant to the questions before the jury. By asking the Court to bar this plea pursuant to Evid. R. 410, Plaintiff is asking this Court to ignore standing Sixth Circuit precedent. *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988).

(Def's Mem. in Opp. at 7, ECF No. 73.) Defendants continue, assessing the Sixth Circuit precedent they contend is binding here. Defendants contend that in *Walker v. Schaeffer* the Sixth Circuit "expressly 'decline[d] to interpret [Rule 410] so as to allow the former defendants to use the plea offensively, in order to obtain damages. . .' which is exactly what Plaintiff is seeking to do here." *Id*. This Court, however, disagrees.

In *Walker*, the two individuals were charged with, pleaded no contest to, and were found guilty of disorderly conduct. The two individuals then sued the officers under 42 U.S.C. § 1983 for false arrest, detention, and imprisonment for the disorderly conduct arrest. The *Walker* court first found that there was "a sound basis for the claim of qualified immunity" for the officers. It then went on to note that it did "not consider [the] conclusion to be barred by Fed. R. Evid. 410, which provides that evidence of 'a plea of nolo contendere' is not, 'in any civil or criminal proceeding, admissible against the defendant who made the plea.'" The court reasoned that Rule 410 was not meant for that type of situation:

> We decline to interpret the rule so as to allow the former defendants to use the plea offensively, in order to obtain damages, after having admitted facts which would indicate no civil liability on the part of the arresting police.

10

*Walker*, 854 F.2d at 143.

In the case *sub judice*, Plaintiff is not using the plea offensively to obtain damages and has not admitted facts which would indicate no civil liability on the part of the arresting Defendant Officers.  The obstruction of police business charge has nothing to do with the excessive force allegations Plaintiff in this case has alleged.  Thus, *Walker v. Schaeffer* is inapposite and not binding in the instant factual scenario.

Accordingly, application of Rules 609 and 410 prohibits the use of the charges and plea related to obstruction of police business, and it is therefore excluded.

### 5. Defendant Officer Smith's Father

Plaintiff asks the Court to exclude evidence related to Officer Smith's father, a Columbus police officer, who tragically passed away in the line of duty.  Plaintiff contends that "this fact could engender a great amount of sympathy towards Officer Smith but it is not relevant to the matters at issue," and should be excluded.

Defendants respond that, whether this evidence is admissible depends upon the context of its introduction" and the ruling should, therefore be deferred until trial.  This Court agrees that it does not have enough information about the death of the father to make a ruling at this time.  The Court, therefore, holds in abeyance its ruling until the Final Pretrial Conference.

### 6. Interview with Plaintiff at the Hospital

Plaintiff moves to exclude the police interview with him while he was hospitalized, arguing:

> At 1:07 a.m. on February 14, 2019, less than twenty-four hours after the incident with police, Sergeants Albert and Ingles interrogated Mr. Osborn in his hospital room. It is clear while watching the video that Mr. Osborn is bruised, battered and under the influence of heavy painkillers. Never-the-less, police interrogate him at his bedside. In response to this intimidating police presence by his hospital bedside,

11

> Mr. Osborn proceeds to fall all over himself apologizing and taking the blame for all that happened.

(Pl's Mem. in Opp. at 8, ECF No. 69.)

Defendants respond that the video shows that Plaintiff was not under duress nor heavily medicated.

The Court starts its analysis with whether the evidence is relevant, which it is. What Plaintiff perceived as happening during the altercation would have the tendency to make the existence of facts that are of consequence to the determination of whether he was the aggressor in the altercation more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. The evidence is otherwise admissible because it is exempt from the hearsay rules as an admission, which could shed light on whether Plaintiff caused any of the interaction between himself and the officers. *See* Fed. R. Evid. 804(b)(3) (statement against interest). The issue is resolved by whether, under Rule 403, the evidence's probative value is substantially outweighed by a danger of unfair prejudice or confusing the issues or the jury. The Court finds that the probative value is not substantially outweighed by the danger of unfair prejudice or confusion of the jury. The interview can be sorted out by a jury, who can find it probative or not. Accordingly, this evidence is not excluded.

**B.     Expert Witness Reports**

Both parties ask to exclude portions or the entirety of the others' expert witness reports. Both parties offer well qualified experts in the area of police procedures and use of force. Rule 702 of the Federal Rules of Evidence governs the use of expert testimony, providing:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods,

>and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

This rule, as amended in 2000, reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Fed. R. Evid. 702 advisory committee's notes, 2000 amend. ("In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science.").

This Court has broad discretion to determine whether to admit or exclude expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) ("[W]e will not substitute our own judgment for that of the district court and will reverse an evidentiary decision "only where we are left with a definite and firm conviction that [the district court] committed a clear error of judgment." (citation omitted)). The burden is on the party proffering the expert report and testimony to demonstrate by a preponderance of proof that the opinions of their experts are admissible. *Nelson v. Tenn. Gas Pipeline Co*., 243 F.3d 244, 251 (6th Cir. 2001).

Determining the admissibility of expert testimony entails a flexible inquiry and any doubts should be resolved in favor of admissibility. *Daubert,* 509 U.S. at 594; Fed. R. Evid. 702 advisory committee's notes, ("[A] review of the case law. . . shows that rejection of the expert testimony is the exception rather than the rule."); *Jahn v. Equine Services, PSC,* 233 F.3d 382, 388 (6th Cir. 2000) (stating that in *Daubert* "[t]he Court explained that Rule 702 displays a liberal thrust with the general approach of relaxing the traditional barriers to opinion testimony" (cleaned up)). Additionally, if the evidence is deemed admissible by a court, but it is ultimately found "insufficient to allow a reasonable juror to conclude that the position more likely than not

13

is true, the court remains free to direct a judgment." *Daubert*, 509 U.S. at 596; *see also* Fed. R. Civ. P. 50.

As to Rule 702, the Sixth Circuit explains:

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.* Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based upon "sufficient facts or data," whether the testimony is the "product of reliable principles and methods," and whether the expert "has applied the principles and methods reliably to the facts of the case." *Id*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008).

**1.     Defendants' Motion**

Plaintiff offers Andrew J. Scott, III as his police procedures expert. Mr. Scott offers two opinions, both of which Defendants move to exclude.

> Opinion 1:
>
> Mr. Osborn was falsely arrested by Officer Jesse Smith, Officer Brian Smith, and Officer Ladipo. Mr. Osborn did not commit a crime and there was no probable cause to suggest he did. Arresting Mr. Osborn without probable cause was inconsistent with generally accepted police practices and procedures, Ohio State Law, and Columbus Police Department policy.
>
> Opinion 2:
>
> The force used against Mr. Osborn was not consistent with generally accepted police practices and procedures. Mr. Osborn did not commit a crime and was not a threat to the police officers or others nor was fleeing the scene. The force used against Mr. Osborn was not reasonable.

(Scott Exp. Report at 5, 7, ECF No. 30-4.)

Defendants contend that "Scott's first opinion is not founded on sufficient facts or data which negates his ability to reliably apply the facts to this case." (Defs' Mot. at 5, ECF No. 68.) Specifically, Defendants argue that because Plaintiff entered a plea of no contest to obstructing

14

official business as a result of the incident about which this case is based, he did in fact commit a crime.  Further, Defendants assert that "Scott's second opinion succumbs to the same issues as opinion 1, but adds additional information that the triers of fact will not be able to consider" because they are "legal conclusions."  *Id*. at 9.  Defendants are partially correct.

That is, "false arrest," "no probable cause," and "reasonable force" can be confusing to the jury in the consideration of the ultimate issues to be decided in this action.  As the Sixth Circuit has explained, "[t]he problem with testimony containing a legal conclusion is in conveying the witness unexpressed, and perhaps erroneous, legal standards to the jury [which] invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law."  *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (cleaned up) (noting that "it is often difficult to determine whether a legal conclusion is implicated in the testimony").

However, as Rule of Evidence 704 provides, "testimony . . . otherwise admissible is not objectionable because it embraces the ultimate issue to be decided"; an expert may testify, based on his or her expertise and experience, that certain facts are indicia of probable cause were or were not present in this incident and/or that the conduct was in accord or not in accord with generally accepted principals in his or her area of expertise.  This type of testimony informs the legal analysis but does provide a legal conclusion.

This type of testimony is, indeed, the substance of Expert Scott's report.  He reviews in his report, *inter alia*, the 911 call from Plaintiff, the body-camera videos from the incident, the arrest information reports, use of force reports, Taser reports, Taser logs, the federal and state court records, the training records of the officers involved and their personnel files.  Mr. Scott then provides his opinions, which he "formed from the totality of [his] specialized knowledge, skill, education, research, literature, [and] training[.]"  (Scott Exp. Report at 4, ECF No. 30-4.).  His curriculum vitae shows that Mr. Scott has over twenty years of law enforcement training and

experience. His opinions, in essence, are that there were not sufficient indicia of probable cause to arrest Plaintiff. Mr. Scott further states that, in his opinion, the arrest was not in compliance with the generally accepted police practices and procedures nor in compliance with Columbus Police Department Policies.

This opinion "will assist the trier of fact to understand the evidence or to determine a fact in issue," and is therefore relevant. *Id.* Finally, the testimony is reliable in that Scott utilized a "body of knowledge and literature about the practices and standards to which modern, professionally administered, police agencies should adhere." *Id*. As he explains and shows throughout his opinion, the "standards and accepted practices have evolved over time in the interest of fostering and maintaining police agencies that are professional, effective and whose practices and polices are observant of the law." *Id*. at 5. He applied his expertise to the facts of this case and formed his opinions. This methodology is reliable and avoids an inadmissible legal conclusion.

As to Defendants' position related to the facts upon which Expert Scott relied, it appears to be in large part an issue of timing. There is no dispute that, at the time the first physical altercation began between Plaintiff and the Defendant Officers, Plaintiff had not committed a crime. The crimes with which Plaintiff was charged occurred after the initial altercation. Thus, this opinion too may be expressed that, based on his expertise, no crime had been committed by Plaintiff when the Defendant Officers arrived and that the indicia of probable cause was not present to provide an arrest at that time, which relates to his opinion on the use of force.

### 2. Plaintiff's Motion

Plaintiff moves to have portions of Defendants' expert witness, Sergeant John C. Cheatham, excluded as hearsay and another portion as medical testimony for which he is unqualified.

#### a. Hearsay

Defendants' expert, Sergeant Cheatham, repeats Ms. Lennex's statements the state court excluded regarding that Plaintiff looked as if he "might assault" one of the officers. Further, Mr. Cheatham talks extensively about Jacob Pressnell and repeats statements made by Mr. Pressnell, whom Plaintiffs have been unable to locate. These statements are hearsay and Plaintiff moves for their exclusion.

Defendants respond that Sergeant Cheatham's report is wholly appropriate because Rule 703 "anticipates this exact scenario":

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703.

(Defs' Mem. in Opp. at 9, ECF No. 73.)

Rule 703 anticipates an expert basing her opinion on evidence that may not otherwise be admissible only if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Id.* For example, an emergency room physician may rely on radiographs in determining the medical treatment of a patient. Sergeant Cheatham can rely on witness interviews because it is the type of facts and data upon which a police expert would rely.

17

The statements of Mr. Pressnell and Ms. Lennex, however, are hearsay so "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id*. In the instant situation, the probative value of the Pressnell and Lennex statements in helping the jury is not substantially outweighed by the prejudicial effects for the reasons the Court identifies above in its evaluation of the Lennex statement. Therefore, Mr. Cheatham may not testify to these statements these individuals made to him or others. The Court finds that the majority of Sergeant Cheatham's report relies upon his expert knowledge of use of force and the video recording he saw of the altercation. These opinions are not excluded.

    b.   **Qualifications**

Plaintiff moves to have the portion of Sergeant Cheatham's report excluded which states "there is no evidence from body worn cameras or in the officer/witness statements to suggest the officers did anything to Mr. Osborn that would result in broken ribs." Plaintiff contends that Sergeant Cheatham was not disclosed as a medical expert or causation expert and therefore his statement should be excluded. This Court agrees.

Sergeant Cheatham is not a medical expert and is not qualified to assess what would or would not cause broken ribs. Cheatham may testify as to his assessment of the video and his perception of contact between the Defendant Officers and Plaintiff's ribs. At trial, Sergeant Cheatham may be cross examined as his assessment of the video. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

## IV.

For the foregoing reasons, the Court, in accordance with this Opinion and Order, **GRANTS in part, DENIES in part, and HOLDS IN ABEYANCE in part** Plaintiff's and Defendants' Motions *in Limine*. (ECF Nos. 68, 69.)  As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

<u>**8/29/2023**</u>                                                           <u>s/Edmund A. Sargus, Jr.</u>
**DATE**                                                                   **EDMUND A. SARGUS, JR.**
                                                                           **UNITED STATES DISTRICT JUDGE**